PARKS v. BARNEY.

INSTRUCTIONS—JURY—TRIAL — SALE OF PERSONAL PROPERTY—FRAUD.—In an
action for the recovery of personal property, in which the defendant justified
the taking, as Sheriff, under an execution against the plaintiff's vendor, the
Court instructed the jury that the evidence showed that there was no im-
mediate delivery, nor any actual and continued change of possession under
the alleged sale to the plaintiff, and therefore to find for the defendant. *Held,*
that the circumstances appearing in the case might perhaps have justified
the jury in the finding that there was fraud, or that there was no delivery,
or actual or continued change of possession; but that the Court could not, in
view of the testimony, say, *as a matter of law,* that the verdict should be for
the defendant.

APPEAL from a judgment for the defendant, and from an
order denying a new trial, in the Sixth District Court, County of
Yolo. DENSON, J.

*Lambert & Dewitt,* and *J. C. Ball,* for Appellants.

The sale to the plaintiff was a legal and valid sale.   The full
value of the horses was paid for them, and the delivery was im-
mediate, and the change of possession *actual and complete.*
(*Stevens* v. *Irwin,* 15 Cal. 503 ; *Lay* v. *Neville,* 25 id. 545 ;
*Godchaux* v. *Mulford,* 26 id. 316 ; *Ford* v. *Chambers,* 28
id. 13.)

The Court transcended its powers in instructing the jury
to find for the defendant. (*Allen* v. *Hopman,* 2 Dana, 221 ;
art. vi, § 17, Const.; Code Civ. Proc. § 2101 ; *Battersby* v. *Ab-
bott,* 9 Cal. 565 ; *People* v. *Ybarra,* 17 id. 166 ; *Miller* v. *Stew-
art,* 24 id. 505 ; *Hodgkins* v. *Hook,* 23 id. 581 ; *Hart* v. *Miller,*
3 A. K. Marsh. 336 ; *Aylwin* v. *Ulmer,* 12 Mass. 22 ; *Utica Ins.
Co.* v. *Badger,* 3 Wend. 102 ; *Fisher* v. *Duncan,* 1 Hen. & M.
563 ; *Trotter* v. *Sanders,* 7 J. J. Marsh. 321 ; *Hardaway* v.
*Manson,* 2 Munf. 230.)

*W. B. Treadwell,* for Respondent.

The alleged sale was not accompanied by an immediate deliv-
ery, nor followed by an actual or continued change of posses-
sion. (Civ. Code, § 3440 ; *Engles* v. *Marshall,* 19 Cal. 320 ;
*Vance* v. *Boynton,* 8 id. 554 ; *Woods* v. *Bugbey,* 29 id. 466 ;

*Stevens* v. *Irwin*, 15 id. 503; *Hurlburd* v. *Bogardus*, 10 id. 518; *Weil* v. *Paul*, 22 id. 492.; *Malone* v. *Plato*, 22 id. 103; *Clow* v. *Woods*, 5 Serg. & R. 287; *Weeks* v. *Wead*, 2 Aik. 64; *The Romp*, Olcott, 203; *Mott* v. *McNiel*, 1 Aik. 165; *Norton* v. *Doolittle*, 32 Conn. 410; *Flanagin* v. *Wood*, 33 Vt. 340; *Patten* v. *Smith*, 5 Conn. 200; *Beattie* v. *Robin*, 2 Vt. 181; Smith's L. C. 33, *Twyne's Case*; Freeman on Ex. §§ 147–155.)

Under the evidence the Court was justified in taking the case from the jury. (*Engles* v. *Marshall*, 19 Cal. 320; *Mott* v. *McNiel*, 1 Aik. 165.)

Ross, J.:

This is an action to recover twenty head of horses, or the sum of one thousand dollars, their value. The defendant is the Sheriff of Yolo County, and took the property on the 10th of August, 1877, under and by virtue of an execution against one Lambert, and in favor of one Asberry. The plaintiff claimed title under an alleged sale from Lambert to him on the 23rd of July, 1877, which sale was claimed by the defendant to be void for want of an immediate delivery, or any actual or continued change of possession of the property.

On the trial, evidence was introduced tending to show this state of facts: Lambert, the former owner of the horses, was the owner of a farm in Yolo County, on which the horses were kept. Up to the 10th of May, 1877, he was living on the farm, and one Grum was working for him. About that time Lambert left the ranch, and did not live there afterward; but he and his sons continued to go there occasionally to look after the stock. Grum continued to make the ranch his headquarters, although he was absent from time to time. He testified at the trial that he did not work for Lambert after May 10th. The plaintiff, who resides in Napa County, testified that he went to Woodland, in Yolo County, on the 22nd of July, 1877, and purchased the horses from Lambert the next day, July 23rd, for $1,000, which he paid him; that they made the trade in the town of Woodland, and Lambert was to deliver him the horses at a butcher's corral, to which place Grum had, on the same day, by direction of Lambert, driven them from the ranch — the

corral being about a mile or a mile and a half from both the town and the ranch; that he and Lambert went to the corral, and there the latter, in the presence of Grum and De Witt, an attorney, delivered him the horses, together with a bill of sale, for which the witness paid him a thousand dollars in gold coin; and that he, plaintiff, then employed Grum to pasture the horses for him at the rate of $2.50 a head per month on Lambert's ranch, a lease of which Grum had on the same day taken from Lambert. Grum testified that he received the horses at the corral from plaintiff, for the purpose of pasturage, upon the terms stated, and that he, on the same day, drove them back to the ranch, where he kept them for plaintiff until the 10th of August, on which day they were levied on by defendant. It also appeared from the plaintiff's testimony that the money with which he made the purchase was borrowed by him after his arrival in Woodland from one Viers, a son-in-law of Lambert, and that plaintiff did not go to look at the horses before agreeing to purchase them. It appeared, however, that he knew the horses, having at one time kept them on his own ranch in Napa County. The case was tried in the Court below with a jury, and, at the close of the testimony, the Court, at the request of the defendant, instructed the jury as follows: "The jury are instructed that in this case the evidence shows that there was no immediate delivery of the property in controversy, nor any actual and continued change of possession of the same, under the alleged sale from Lambert to the plaintiff. You will, therefore, find a verdict for the defendant." The instruction was duly excepted to. The jury retired, and after deliberation, were unable to agree. Returning into court, they inquired whether they were bound to find and return a verdict as directed in the said instruction, and being informed that they must obey the instruction as given them by the Court, and that if they refused to do so they would be in contempt of court and subject to a fine, they returned a verdict for the defendant.

The instruction was clearly erroneous. If it was true that at the time of the alleged sale, and prior thereto, Grum was not in the employ of Lambert, and that the latter had in good faith leased the ranch to Grum, and that the plaintiff in good

faith bought the horses from Lambert, the delivery of the horses at the corral, and the subsequent employment of Grum by plaintiff to pasture them, and Grum's actual possession of them for that purpose, would have been such evidence of a delivery and actual and continued change of possession, as might have justified the jury in finding a verdict for the plaintiff. The truth or falsity of the testimony, and the *bona fides* of the transaction, were questions for them to pass upon. The circumstances appearing in this case might perhaps have been sufficient to justify the jury, or the Court, if it had been sitting as a jury, to find *from the evidence* that there was fraud in the transaction, or that there was in fact no delivery, or no actual or continued change of possession. But the Court could not, in view of the testimony, say as a *matter of law* that the verdict must be for the defendant.

The appeal from the judgment having been taken too late, must be dismissed.

Appeal from judgment dismissed. Order denying a new trial reversed, and cause remanded for a new trial.

McKINSTRY, J., and McKEE, J., concurred.